# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CORNERSTONE THERAPY SERVICES, INC.,** | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:16CV00018 |
| v. | ) ) | **OPINION AND ORDER** |
| **RELIANT POST ACUTE CARE SOLUTIONS, LLC, ET AL.,** | ) ) ) ) | By: James P. Jones<br>United States District Judge |
| Defendants. | ) | |

*Mary Foil Russell, Sands Anderson PC, Christiansburg, Virginia, for Plaintiff; Gary L. Edwards and Ronald S. Range, Jr., Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Johnson City, Tennessee, for Defendants.*

In this breach of contract case arising under Virginia law, the facts show that the parties, contemplating the purchase and sale of a business, entered into a written non-disclosure agreement that prohibited the prospective purchaser for two years from soliciting for employment or hiring any manager of the seller. The sale did not occur and it is alleged by the plaintiff seller that the purchaser did in fact hire several managers of the seller in violation of the no-hire restriction. The defendant purchaser has now filed a Motion for Summary Judgment, contending that the contract provision is not enforceable because the seller could not have retained the managers in question in light of its loss of business and thus there was no legitimate business interest to be protected by the no-hire restriction. The

defendant also contends that the plaintiff is unable to prove its damages with reasonable certainty.

I.

The following facts are taken from the summary judgment record, viewed in the light most favorable to the nonmoving plaintiff.

The plaintiff Cornerstone Therapy Services, Inc. ("Cornerstone") provides physical and occupational therapy to home health agencies and physical, occupational, and speech therapy to skilled nursing facilities.

Cornerstone previously employed licensed therapists who provided therapy to patients of Abingdon Health & Rehab Center, LLC ("Abingdon Health & Rehab") and SP Lee LLC d/b/a Lee Health & Rehab ("Lee Health & Rehab"), both skilled nursing facilities. Both Abingdon Health & Rehab and Lee Health & Rehab are owned by Commonwealth Care of Roanoke ("CCR"). Beginning in 2010, Cornerstone had a contract with CCR to provide therapy services at Lee Health & Rehab. Beginning in 2014, Cornerstone had a contract with CCR to provide therapy services at Abingdon Health & Rehab. Cornerstone's contracts with CCR were automatically renewable for one-year terms but could be terminated by either party upon written notice of nonrenewal ninety days prior to the end of a term.

Defendants Reliant Post Acute Care Solutions, LLC, Reliant Medical Management, LLC, and Reliant Rehabilitation Holdings, Inc., do business as Reliant Post Acute Care Solutions. For convenience I will refer to the defendants collectively as "Reliant." Like Cornerstone, Reliant provides therapy services in skilled nursing facilities.

In 2014, Reliant and Cornerstone began negotiations for the purchase of Cornerstone by Reliant. As part of the negotiations, Cornerstone requested a non-disclosure agreement ("NDA"). Reliant produced such an agreement and the parties executed it on August 8, 2014. In addition to provisions concerning the protection of confidential business information provided to Reliant by Cornerstone, the NDA also contains the following no-hire provision:

> Each Party agrees that during the term of this Agreement and for a period of two years from the date of this Agreement, except per the terms of a specific written consent of the other Party, neither Party, nor any of its Representatives on its behalf, will directly or indirectly . . . solicit for employment or engagement or hire or engage any director, manager, officer, or managerial-level employee of the other Party with whom it has had contact or who became known to it in connection with consideration of the Proposed Relationship, except that neither Party will be precluded from engaging in general solicitations of employment not specifically directed at employees of the other Party or hiring any employee who responds to such general solicitation or has terminated employment with the other Party at least six months prior to the date of such Party's solicitation of such employee.

Am. Compl. Ex. C ¶ 4, ECF No. 35-3.[1]

Following execution of the NDA, Reliant engaged in due diligence examination of Cornerstone's business, as permitted by the NDA, but without the execution of a final agreement of sale. On June 3, 2016, CCR gave notice to Cornerstone that it was terminating the Abingdon Health & Rehab contract for services and it expired on September 3, 2016. On June 22, 2016, CCR similarly gave notice to Cornerstone that it was terminating the contract at Lee Health & Rehab, which accordingly expired on or about September 22, 2016.

After the expiration of the CCR contracts with Cornerstone, Reliant began providing therapy services to the same two skilled nursing facilities and hired Cornerstone employees who had been assigned to these facilities, some of whom Cornerstone has identified as being its former managers.

This action was filed on July 1, 2016. In its initial Complaint, Cornerstone sought damages and an injunction barring Reliant from contracting with CCR to provide therapy services to Abingdon Health & Rehab and Lee Health & Rehab. A hearing was held on August 26, 2016, on a motion by Cornerstone for a preliminary injunction. At the conclusion of the hearing, a preliminary injunction

---

[1] The term of the NDA was three years from the last date of disclosure of confidential information, Am. Compl. Ex. C ¶ 9, which the record shows was January 2016. Tr. 47, ECF No. 39. However, the NDA's no-hire provision also states that it is effective for two years from August 8, 2014, the beginning date of the NDA. Reliant does not contend that the no-hire provision is unenforceable because of the length of time of its restriction.

was denied by the court on the ground that Cornerstone had not shown irreparable harm. At the hearing, Steven Garrett, president of Cornerstone, testified that "around 69 percent" of Cornerstone's revenues came from the two CCR contracts and with the loss of those contracts, Cornerstone would have to reduce its number of therapist employees from 42 or 43 to "about 15." Tr. 23, ECF No. 39.[2]

Following denial of its preliminary injunction, Cornerstone filed an Amended Complaint, asserting claims of breach of contract, tortuous interference with business expectancy, violation of the Virginia Trade Secrets Act, and violations of certain federal healthcare laws. On a Motion to Dismiss by Reliant, I dismissed all of Cornerstone's claims in the Amended Complaint except that for breach of contract of the no-hire clause of the NDA. *Cornerstone Therapy Servs., Inc. v. Reliant Post Acute Care Sols., LLC,* No. 2:16CV00018, 2016 WL 6871440, at *8 (W.D. Va. Nov. 21, 2016).

Reliant's Motion for Summary Judgment has been fully briefed and is ripe for decision.[3]

---

[2] In its Amended Complaint, Cornerstone alleged that "approximately 28 licensed therapists" employed by it were assigned to the two skilled nursing facilities in question. Am. Compl. ¶ 3, ECF No. 35. It appears from the record that those approximately 28 included five to seven therapists claimed to be managers.

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Id.* at 327. It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

II.

In this diversity action, the parties are agreed that Virginia substantive law must be applied. To recover under a claim of breach of contract, a plaintiff must prove: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (internal quotation marks and citations omitted). Ultimately, "a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted." *Id.* (internal quotation marks and citation omitted).

At least for the purposes of the present motion, Reliant does not contest that Cornerstone can show that it did in fact hire several managers of Cornerstone during the term of the no-hire provision.[4] Nevertheless, it argues that the no-hire provision is not enforceable as against public policy because it provides no "legitimate interest to protect," citing *Therapy Services, Inc. v. Crystal City Nursing Center, Inc.*, 389 S.E.2d 710, 712 (Va. 1990). In that case, a skilled nursing facility contracted with another party to provide therapists to work in the

---

[4] Reliant concedes that it does not dispute for the purposes of summary judgment that "only five (5) and under no circumstances more than seven (7), of the 'approximately' twenty-eight (28) therapist employees referenced in Cornerstone's Amended Complaint, are Cornerstone managers to which the scope of the No-Hiring Provision is limited." Defs.' Mem. Supp. Mot. Summ. J. 5 n.3, ECF No. 64.

facility, with a contract provision that prohibited the facility from hiring away any of the therapists for six months following the duration of the contract period. The Virginia Supreme Court upheld the no-hire provision even though it held that such a provision "is a contract in restraint of trade and will be held void as against public policy if it is unreasonable as between the parties or is injurious to the public." *Id.* at 711. The court found that because the provider of therapist services had "a legitimate interest in protecting its ability to maintain professional personnel in its employ," the no-hire provision was valid. *Id.* at 711-12.

Reliant contends that because Cornerstone had lost its contracts to provide therapists for the two CCR facilities, it had no need for managers, and thus no legitimate interest to protect. However, while the managers in question were working at the CCR facilities, there is no proof in the present record that Cornerstone could not have used the managers, or some of them, in other aspects of its business. In fact, in its answers to interrogatories, it asserted that it would have "relocated some therapists in its home health business on at leat a part-time basis." Defs.' Mem. Supp. Mot. Summ. J. Ex. 1, Resp. Interrogs. 4, ECF No. 64-1. Reliant may be correct that Cornerstone had no further need for any of the

managers hired away by Reliant, but that undisputed fact does not appear in the present summary judgment record.[5]

III.

For its remaining ground for summary judgment, Reliant contends that Cornerstone cannot prove any damages from a violation of the no-hire provision of the NDA.

> "As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." *Kamlar Corp. v. Haley,* 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983) (quoting *Wright v. Everett,* 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956)). Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim. *Filak* [*v. George*]*,* 267 Va. [612] at 619–20, 594 S.E.2d [594] at 614-15 [2004]. The plaintiff also has the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." *Shepherd* [*v. Davis*]*,* 265 Va. [108] at 125, 574 S.E.2d [514] at 524 [2003] (citations omitted).

*Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 136 (Va. 2009).

In its Amended Complaint, Cornerstone sought damages of $4 million, which it contends is the value of its business, but there is no support for that claim under the facts of this case. In its response to the Motion for Summary Judgment, it proposes two theories of recovery. First, it seeks its loss of profits from the

---

[5] Reliant relies on remarks made by the court during the preliminary injunction hearing expressing concern that the Cornerstone employees would suffer if Reliant was enjoined from hiring them and Cornerstone had no need for them. Tr. 48, ECF No. 39. But those were not findings binding on the merits of Cornerstone's case. And in fact, I noted that Cornerstone might not have need for "many" of the employees. *Id.* at 57.

operation of the two contracts with CCR. Mem. Opp'n Mot. Summ. J. 6-7, ECF No. 72. But those contracts were terminated by CCR as it had a right to do and there is no evidence that Reliant's violation of the no-hire provision caused the termination of the CCR contracts.

Cornerstone relies on *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.,* 914 F.2d 556, 564 (4th Cir. 1990), in which the court of appeals approved an equitable constructive trust on the amount of profits earned by a party that misappropriated a trade secret, reasoning that it would be "far easier" to determine such profits than to determine the amount of the victim's actual damages. Here, however, it would be more difficult to prove the amount of profit attributable to the managers hired by Reliant than any damages suffered by Cornerstone.

Alternatively, Cornerstone seeks the costs of "buying out" therapy managers. Mem. Opp'n Mot. Summ. J. 7, ECF No. 72. As explained in a declaration by Steven Garrett, the president of Cornerstone, "had Reliant sought to take over the Abingdon Health & Rehab and Lee Health & Rehab contracts and sought to buy out the contracts for these professionals, the amount per managerial level employee would be $45,000 to $50,000." *Id*. at Attach. 1, Garrett Decl. ¶ 12, ECF No. 72-1. Garrett bases this figure "on industry standards and considering the costs to recruit and train managers and therapists." *Id.* In his testimony at the preliminary injunction hearing, Garrett testified that Cornerstone had replaced a

company called Genesis in supplying therapists to CCR's Abingdon Health & Rehab facility and when it did, it had to pay Genesis to "buy out" Genesis' employees' non-compete clauses, in order to keep them at the facility. Tr. 43, ECF No. 39.

Reliant objects to this theory of recovery, including on the ground that Garrett has not been timely disclosed as an expert witness and thus cannot testify as to industry standards. However, even assuming that as president of the company Garrett could testify as a non-expert as to Cornerstone's costs to recruit and train managers, he does not connect Cornerstone's loss, if any, to Reliant's violation of the no-hire provision. The fact is that Cornerstone had lost the CCR contracts, not because of Reliant's hiring away of the managers, but because CCR cancelled the contracts pursuant to their terms. Cornerstone thus could not have used the lost managers at the two skilled nursing facilities. It alleges that it could have relocated "some" of the therapists on a "part-time basis" to other duties, Resp. Interrogs. 4, ECF No. 64-1, but it does not show whether it in fact expended money to recruit and train any new managers for those duties. It also alleges that it would have "solicited" other contracts in order to employ the managers taken by Reliant, but it is simply conjecture whether such new contracts could have been obtained and whether they would have provided employment for the lost managers.

For these reasons, I find that Cornerstone cannot prove any reasonably certain pecuniary loss resulting from Reliant's violation of the no-hire provision of the NDA, and thus summary judgment is appropriate.

IV.

For the foregoing reasons, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 63, is GRANTED. A separate final judgment will be entered forthwith.[6]

ENTER: March 16, 2018

/s/ James P. Jones
United States District Judge

---

[6] Cornerstone also argues that Reliant's Motion for Summary Judgment violates Local Rule 56(b) because the brief in support of it does not contain a separately captioned section setting forth the material facts claimed to be undisputed, and for this reason the motion ought to be denied. I find that Reliant's brief substantially complies with the rule.